**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                                                **15-CR-98G**

      **-v-**

**MATTHEW JOHNSON,**

         **Defendant.**
_____

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Frank P. Geraci, Jr., in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report on dispositive motions.

## PRELIMINARY STATEMENT

The defendant, Matthew Johnson ("the defendant"), is charged with a number of co-defendants with having violated Title 21 U.S.C. §§ 846 and 856(a)(1) in a two count indictment. Dkt. #1. He has filed a motion wherein he seeks "suppression of physical evidence," "suppression of statements" and "suppression of intercepted electronic/wire communications." Dkt. #151, pp. 19-24, ¶s 85-105. The government has filed its opposition to this motion. Dkt. #164. Oral argument was heard by this Court, and at that time, the defendant requested additional time within which to file a "supplemental affidavit" in support of his motion to suppress. This Court granted this request and gave the defendant until December 23, 2016 to file such an affidavit. The

defendant has failed to file any affidavit in support of his motion to suppress, and as a result this Court took the matter under advisement.

# **FACTS**[1]

On May 7, 2015, this Court issued a search warrant authorizing the search of premises located at 135 Shepard Street, Buffalo, New York based on the sworn application and affidavit of Special FBI Agent Mark Schirching sworn to May 7, 2015 and a copy of the indictment attached thereto and marked Exhibit C wherein the defendant Johnson is charged along with a number of co-defendants with having violated 21 U.S.C. § 846. Dkt. #15-M-40(1). This warrant was executed by law enforcement officers on May 8, 2015 and the defendant was arrested at that time. The search of the premises resulted in the seizure of a weapon, various drug paraphernalia, suspected drugs, ammunition, a safe and the sum of $13,501 from the safe. Dkt. #15-M-40(2).

On March 25, 2015, a Title III intercept Order was issued by the Hon. William M. Skretny authorizing the interception of wire communications on certain designated telephone facilities. 15-MR-29. On April 14, 2015, Judge Skretny issued a

---

[1] The facts are taken from the papers filed in this case as they relate to the issues raised by the defendant in his motion. They are also based on a review made by this Court of the Title III applications and affidavits submitted to the Hon. William M. Skretny in support of the relevant Title III Orders at issue.

2

Title III intercept Order for two additional telephone facilities that had not been listed in 15-MR-29.  *See* 15-MR-45.  The defendant was named as an "interceptee" in the affidavits submitted to Judge Skretny in support of both of these intercept Orders and is considered to be an "aggrieved person" as defined in 18 U.S.C. § 2510(11) and therefore has standing to make his motion to suppress any statements attributed to him by way of such intercepts.

## DISCUSSION AND ANALYSIS

### A.  The Search Warrant for 135 Shepard Street – "Suppression of Physical Evidence"

In attacking the validity of the search warrant authorizing the search of 135 Shepard Street, the defendant asserts that the "application" for the warrant "is conclusory and lacks the necessary specificity concerning location of objects and/or contraband to be seized."  Dkt. #151, p. 19, ¶ 78.  This assertion is totally without merit.

The defendant has failed to submit an affidavit establishing that he had a reasonable expectation of privacy in the premises located at 135 Shepard Street so as to provide legal standing to attack the validity of the search warrant and actual search of that premises.  It is pointed out that the co-defendant, Judy Berry, is on record in this case claiming that 135 Shepard Street is her residence.  *See* Dkt. #146.

In order to establish a violation of his Fourth Amendment rights, the defendant must meet a twofold requirement, "first that [he has] exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable'." *Katz v. United States*, 389 U.S.347 (1967).

"It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure. Alderman v. United States, 394 U.S. 165, 171–172, 89 S.Ct. 961, 965–966, 22 L.Ed.2d 176 (1969); Rakas v. Illinois, supra, 439 U.S., at 131, n. 1, 133–134, 99 S.Ct., at 425–426, n. 1, 425–426; Rawlings v. Kentucky, 448 U.S. 98, 106, 100 S.Ct. 2556, 2562, 65 L.Ed.2d 633 (1980). We applied this principle to the case of coconspirators in Alderman, in which we said:

> The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Co-conspirators and codefendants have been accorded no special standing." 394 U.S., at 171–172, 89 S.Ct., at 965–966.

*United States v. Padilla,* 508 U.S. 77, 81-82 (1993).

"The party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. Rakas v. Illinois,

4

439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978); United States v. Davis, 932 F.2d 752 (9th Cir.1991). The movant must show that he had an expectation of privacy in the invaded place and that the expectation was legitimate, one that society is prepared to recognize as reasonable. Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); Rakas v. Illinois, 439 U.S. at 140–41, 99 S.Ct. at 428–29; United States v. Paulino, 850 F.2d 93 (2d Cir. 1988). In evaluating these claims, the court generally considers whether the defendant had any property or possessory interest in the place searched or the items seized. Rakas v. Illinois; United States v. Paulino; United States v. Davis, 932 F.2d 752, 756 (9th Cir.1991); United States v. Burnett, 890 F.2d 1233 (D.C.Cir.1989)."
*United States v. Osorio, 949* F.2d 38,40 (2d Cir.1991).

The defendant has failed to meet the burden establishing that he had a reasonable expectation of privacy in 135 Shepard Street and therefore it is recommended that his motion to suppress the use of the evidence seized from that location at trial be in all respects denied.

Even if it were assumed *arguendo* that the defendant did have standing to attack the validity of the search warrant of May 7, 2015 authorizing the search of 135 Shepard Street, his claim is nevertheless without legal merit.

5

The affidavit of S.A. Schirching sworn to May 7, 2015 in support of the search warrant for 135 Shepard Street expressly states that "based on [authorized] intercepted [telephone] conversations, and observations made by surveillance personnel, it is believed that [co-defendant] Myers and his associates keep a small amount of cocaine base . . . at 135 Shepard Street, Buffalo, N.Y." S.A. Schirching also states that "proceeds" from the "sales of narcotics" are left at 135 Shepard. 15-M-40, Dkt. #1, ¶ 11, 15(h)(i)(j)(k).

The sealed indictment attached to S.A. Schirching's affidavit of May 7, 2015 further establishes probable cause that the defendant, along with other named co-defendants, was engaged in the possession and distribution of narcotics in violation of 21 U.S.C. § 846. 15-M-40, Dkt. #1, pp. 44-45.

Therefore, it is recommended that the defendant's motion to suppress the evidence seized from 135 Shepard Street, Buffalo, New York on May 8, 2015 pursuant to this Court's search warrant dated May 7, 2015 be in all respects denied.

### B. Suppression of Statements

The defendant alleges through his attorney based "upon information and belief" that he "did not knowingly and voluntarily waive his Miranda Rights." According to defendant's counsel's allegations, "it appears that [the defendant] waived his Miranda Rights on May 8, 2015, immediately after her (sic) arrest without the benefit of counsel."

Counsel for the defendant further "asserts that in such a coercive and intimidating environment she (sic) did not understand nor were the ramifications of the waiver explained to him by the individuals who held him in custody or the persons who interrogated him." The defendant, through his attorney, also "asserts any waiver of his statutory and constitutional rights were obtained based on inordinate pressure and coercion brought to bear upon him by the investigating agent(s) and interrogator(s)." Dkt. #151, p. 21, ¶ 91.

As stated earlier, the defendant has not submitted an affidavit based on personal knowledge to support his claims that his "Miranda Rights" were violated. In fact, his counsel does not even state what statements of the defendant, if any, should be suppressed. Nor does he describe in any way how or why the "environment" that the defendant was subjected to was in any way "coercive and intimidating."

In order to warrant a suppression hearing, the defendant must demonstrate a specific factual dispute that can be resolved by a hearing. *See United States v. Mathurin,* 148 F.3d 68 (2d Cir. 1998) (evidentiary hearing required where defendant averred that he was never given *Miranda* warnings); *United States v. Richardson*, 837 F. Supp. 570 (S.D.N.Y. 1993) (evidentiary hearing not required where defendant failed to make specific factual allegations of illegality based upon personal knowledge but defense counsel merely alleged that defendant did not knowingly waive his rights before answering questions); *United States v. Ahmad*, 992 F. Supp. 682, 685 (S.D.N.Y. 1998) (affidavit of defense counsel seeking suppression of custodial

7

statements for failure to provide *Miranda* warnings insufficient to warrant evidentiary hearing or suppression); *United States v. Caruso*, 684 F. Supp. 84, 87 (S.D.N.Y. 1988) ("without a supporting affidavit of someone with personal knowledge of the underlying facts, the court need not resolve factual disputes that may be presented by the moving papers."). Indeed, the defendant's papers must raise a "sufficiently definite, specific, detailed, and nonconjectural" factual basis for the motion in order to require a hearing. *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992). As defendant has failed to raise a factual basis for his motion to suppress statements, it is recommended that this aspect of his motion be denied.

### C. Suppression of Intercepted Electronic/Wire Communications

As stated earlier, the defendant was named as an "interceptee" in the applications/affidavits submitted to Judge Skretny in support of the intercept Orders of March 25 (15-MR-29) and April 14, 2015 (15-MR-45), and therefore he has standing pursuant to 18 U.S.C. § 2518(1)(a) to assert his claim in seeking suppression of his intercepted statements. The defendant asserts that probable cause was lacking to support the issuance of the Orders and that there was a failure by the government to establish "necessity" for the Orders. The defendant "requests a hearing to determine whether or not probable cause existed to lawfully permit the issuance of the wiretap orders." He also claims "upon information and belief, the interception of electronic communications were not minimized and particularized to comply with the requirements of federal law governing the interception of electronic communications." Dkt. #151, pp. 22-23, ¶s 98-102.

Basically, the defendant is requesting that a review of Judge Skretny's decision in issuing the Intercept Orders of March 20 and April 14, 2015 be made so as to conclude that such orders were improperly issued. The role of this Court in conducting such a review is no different than that conducted by a court of appeals and therefore, the admonition of the Second Circuit Court of Appeals is appropriately applied in this process wherein the Court stated:

> "In reviewing a ruling on a motion to suppress wiretap evidence, we accord deference to the district court." *Miller*, 116 F.3d at 663 (quoting *Torres*, 901 F.2d at 231). Our role in reviewing the issuance of a wiretap order is not to make a *de novo* determination of the sufficiency of the application, "but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *Id.*

*United States v. Diaz*, 176 F.3d 52, 109 (2d Cir.), *cert. denied* by *Rivera v. United States*, 528 U.S. 875 (1999).

This Court has reviewed the applications and affidavits submitted to the Hon. William M. Skretny in support of the request for intercept Orders 15-MR-29 and 15-MR-45 and concludes that the claims of the defendant attacking the validity of these Orders are without merit.

S.A. Schirching submitted a sixty (60) page affidavit sworn to March 20, 2015 in support of the application for intercept Order 15-MR-29 seeking authorization to intercept electronic communications made on a specifically referenced telephone facility which he claims was being used by specifically named "interceptees" and "violators" to

9

violate 21 U.S.C. §§ 841, 846.  15-MR-29, pp. 2-3, ¶s 3-4.  S.A. Schirching also submitted an eighty-three (83) page affidavit in support of the application for intercept Order 15-MR-45 seeking authorization to intercept electronic communications made on specifically referenced telephone facilities which he claimed were being used by specifically named "interceptees" and "violators" to violate 21 U.S.C. §§ 841, 846.  15-MR-45, pp. 2-4, ¶s 3-4.  Admittedly the defendant is not named nor referenced in these affidavits of S.A. Schirching, but that is of no legal consequence in determining the validity of the intercept Orders, 15-MR-29, 15-MR-45, and whether there was probable cause established for the issuance of these Orders.

As the Second Circuit Court of Appeals has stated, "the standard probable cause applicable to [18 U.S.C.] § 2518 is the same as the standard for a regular search warrant.  Under *Illinois v. Gates*, 462 U.S. 213 (1983), probable cause for a search warrant is established if the totality of the circumstances indicate a probability of criminal activity.  *Id*. at 230-32; *United States v. Diaz, supra* at 110.

In his affidavit sworn to March 20, 2015, S.A. Schirching describes in great detail the alleged criminal activity that has taken place by the named "interceptees" and "violators."  *See* paragraphs 12 through 44 of this affidavit.  A similar detailed description of the criminal activities of the named "interceptees" and "violators" is set forth in paragraphs 12 through 77 of S.A. Schirching's affidavit sworn to April 14, 2015.

The facts set forth in S.A. Schirching's affidavits of March 20 and April 14, 2015 are more than "minimally adequate" to support Judge Skretny's determination that was made in the issuance of intercept Orders 15-MR-29 and 15-MR-45. Therefore, it is recommended that defendant's motion to suppress the evidence obtained through the use of those intercept orders because the orders lacked probable cause be denied.

As to the defendant's claim that proper "necessity" for the issuance of the intercept Orders of March 20 and April 14, 2015 had not been established, it is the finding of this Court that such claim is also without legal merit.

Since the holding in *United States v. Torres*, 901 F.2d 205 (2d Cir.), *cert. denied* 498 U.S. 906 (1990), addresses the issues raised by the defendant herein on the issue of whether 18 U.S.C. § 2518(1)(c) was complied with, it is worthwhile to sacrifice brevity and set forth that Court's ruling in detail.

> Section 2518(1)(c) requires that an application for such an interception shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ." Similarly, section 2518(3)(c) requires the judge to whom an application for a wiretap is made to determine, as a condition of authorizing the tap, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."
>
> The application for the wiretap in this case was based upon a thirty-six page affidavit by DEA agent Timothy J. Sullivan

dated May 27, 1987. Flores contends that when the application for a wiretap was made, traditional law enforcement methods had already achieved "extraordinary success . . . in penetrating the deepest reaches of the Torres Organization," and that the "affidavit utterly failed to establish, even on a superficial level, that less intrusive techniques had not been successful and could not be successful." In advancing this position, Flores points out that our decision in *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), precludes the authorization of wiretaps based upon "generalized and conclusory statements that other investigative procedures would prove unsuccessful," *id.* at 104. Flores also argues that it does not suffice to show that a case belongs to some general class of cases which require wiretap investigation, citing *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1975) (gambling case).

We are unpersuaded, and conclude that the application in this case provided a sufficient basis for authorizing the Flores wiretap. Section 2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974). As we have stated:

> "[T]he purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods."

*United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (quoting *United States v. Hinton*, 543 F.2d 1002, 1011 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976)), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *see also United States v. Fury*, 554 F.2d 522, 530 (2d Cir), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

The role of an appeals court in reviewing the issuance of a wiretap order, furthermore, "is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.) (collecting cases), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). And, as the *Scibelli* court went on to say:

> [I]n determining the sufficiency of the application a reviewing court must test it in a practical and common sense manner. The legislative history makes clear that section 2518(1)(c) is not designed to force the Government to have exhausted all "other investigative procedures".

> "The judgment [of the district judge] would involve a consideration of all the facts and circumstances. Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants. Merely

13

> because a normal investigative technique is theoretically possible, it does not follow that it is likely. What the provision envisions is that the showing be tested in a practical and commonsense fashion.
>
> S.Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, p. 2190 (citations omitted). *Scibelli*, 549 F.2d at 226.

*Id.* at 231-232) (brackets included); *See also United States v. Diaz. Supra 111.*

In his sixty (60) page affidavit sworn to March 20, 2015, S.A. Schirching describes in great detail the various investigative techniques that had been used as well as why normal investigative techniques "have been tried and failed" and/or "reasonably appear unlikely to succeed if continued or tried, or are too dangerous to employ in this investigation." 15-MR-29, ¶s 46-71.

In his eighty-three (83) page affidavit sworn to April 14, 2015, S.A. Schirching describes in great detail the various investigative techniques that had been used as well as why normal investigative techniques "have been tried and failed" and/or "reasonably appear unlikely to succeed if continued or tried, or are too dangerous to employ in this investigation." 15-MR-45, ¶s 79-103.

Giving proper deference to Judge Skretny's review and acceptance of both of S.A. Schirching's affidavits sworn to March 20 and April 14, 2015 in support of

14

the applications for the intercept Orders of March 20, 2015 (15-MR-29) and April 14, 2015 (15-MR-45), and his decision to grant both applications, it is concluded that Judge Skretny "properly found that conventional investigative techniques had been exhausted and that alternatives to wire interception would be unlikely to succeed or would be too dangerous." Therefore, it is recommended that the defendant's motion to suppress be denied on his claim of lack of "necessity."

### D. Minimization Issue

18 U.S.C. § 2518(5) provides that the "authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter. . . ."

In addressing this complex concept of "minimization," the United States Supreme Court has held that:

> The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to "minimize" the interception of such conversations. Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case.

*Scott v. United States*, 436 U.S. 128, 140 (1978); *see also United States v. Principe*, 531 F.2d 1132, 1140 (2d Cir.), *cert. denied,* 430 U.S. 905 (1976).

As to the "minimization" issue, the defendant has failed to describe any alleged conversations that were improperly intercepted by reason of not having properly

15

"minimized" their eavesdropping. He also fails to describe in what way the intercepting agents failed to "minimize" their interceptions. Therefore, it is recommended that defendant's motion to suppress the use of the intercepted conversations authorized under intercept Orders 15-MR-29 and 15-MR-45 be denied.

This Report, Recommendation, and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statue, Federal Rule of Criminal Procedure 59(b)(2) and Local Rule of Criminal Procedure 59(c)(2).

The parties are reminded that, pursuant to Rule 59 of the Local Rules of Criminal Procedure for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection, and shall be supported by legal authority." **Failure to comply with the provisions of Local Rule 59 may result in the District Judge's refusal to consider the objection.**

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Mass.*

*Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988). Local Rule 59(c)(3) mandates that "[a]ny party filing objections to a Magistrate Judge's order or recommended disposition must include with the objections to the District Judge a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge."

DATED:  November 3, 2017
        Buffalo, New York

                                    *S/ H. Kenneth Schroeder, Jr.*
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**